The final case on the call of God this morning is case number 124610, Hernandez v. Lifeline Ambulance, agenda number 16. Counsel, when you're ready, you may proceed. Good morning, and may it please the Court. Counsel. My name is Mike Risas, and I'm here today on behalf of Defendants of Cohen's Lifeline Ambulance and Joshua Nicholas. With me today also are my colleague and partner, Luke Richard, and John Hurley, President and CEO of Lifeline Ambulance. This appeal involves section 3.150 subparagraph A of the Emergency Medical Services Systems Act. It presents the question whether the limited immunity from negligence applies when an ambulance in transit to pick up a patient for non-emergency medical transport is involved in an accident with a motorist. That question is one of first impression. We submit that getting to the patient with a properly staffed and equipped ambulance is essential to providing medical services under the Act. If we are correct, the appellate court should be reversed and the trial court affirmed. Now, the limited immunity is found in section 3.150 subparagraph A, but the definition of, quote, non-emergency medical services, close quote, is found in section 3.10 subparagraph G. It defines non-emergency medical services as medical care rendered to patients before or during transportation to or from healthcare facilities for the purpose of obtaining medical or healthcare services which are not emergency in nature using a vehicle regulated by the Act. There is no question that at the time of the accident, the ambulance had been dispatched in the normal course of its duties within the language of 3.150 to transport the patient from dialysis treatment in Villa Park to a second healthcare facility in Bullside using a vehicle regulated by the Act. However, the appellate court in paragraph 19 of its opinion quoted only the part of the definition of non-emergency medical services rendered, quote, during transportation, close quote, to hold that the immunity did not apply here because the patient was not already on board the ambulance. It read the word, quote, before, close quote, out of the Act altogether over a dissent. Now, prior cases from this court have applied the immunity before transportation when the patient was not in the ambulance. First, in American National Bank v. City of Chicago, the immunity applied when paramedics tragically failed to locate a patient in an apartment building. Eight years later, in Abruzzo v. City of Park Ridge, the immunity was held to apply when the paramedics failed to properly assess and evaluate the patient in his own bedroom. These decisions are a step removed from ambulance transport, but this case broadly construed the Act to extend immunity for accident omissions taking place before the actual transportation of the patient. Now, significantly, in American National Bank, this court reasons that if, quote, transporting a patient to a hospital is an aspect of life support services, then so, too, is locating the patient in the first place. That is what this appeal is all about. It's about reaching the patient or transport with an ambulance, regulated under the Act, that's properly equipped and staffed. Or, as this court also put it in American National Bank, locating a person in need of attention is the first step in providing medical services. This court in American National Bank also noted the Act's regulation of other matters, including communications, response time, and ambulance operation standards, all of which demonstrated the Act's broad scope. And we submit that reasoning is equally applicable here to conduct that is integral to providing non-emergency medical services. Getting to the patient with an ambulance properly staffed and equipped as required by the Act. Now, the legislature has not been silent. It has amended the Act, but it has amended the Act so that it is broader than it was at the time that this court decided American National Bank. As this court noted in Abruzzo in 2008, the legislature broadened the Act by amending it to include non-emergency medical services in addition to emergency medical services. That's why Section 3.15 immunity applies to both emergency and non-emergency medical services. That's why Section 3.10 subparagraph H applies to the use of an ambulance when emergency or non-emergency medical services are needed. This court's broad interpretation, the judicial gloss that it has put on the Act, is now itself part of the Act. But the appellate court here wrongly ignored both American National Bank and Abruzzo. It didn't even cite them or discuss them. Now, we submit that the Act and this court's broad construction recognize that immunity has to extend to certain conduct before actual transport. This court has framed it in different ways in those two opinions. Sometimes it talks about conduct that is the first step before the actual rendering of non-emergency medical services. It's also talked about it as being an integral aspect of providing those services. But however you frame it, however you describe it, if transporting a patient in an ambulance to or from a healthcare facility is an aspect of non-emergency medical services, then so too should be the act of driving to reach the patient in the first place. Now, plaintiff relies on Section 310H of the Act to argue that the immunity does not apply until, in the words of that provision, quote, emergency or non-emergency medical services are needed, close quote. During the use of the ambulance, the implication of his argument is that the patient already has to be on board. The appellate court never relied on this section, and for good reason. The statute says that the use of the ambulance is not covered until the services are needed, and services are needed from the time the ambulance is dispatched before the patient is on board. Now, plaintiff would also have this court believe that the Act does not apply because Nicholas, the driver, was driving without the dialysis patient on board. But the ambulance was subject to the Act from the moment of dispatch. Section 3.85 of the Act makes the Illinois Department of Public Health responsible for regulating ambulances, including design, specifications, equipment, staffing, operation, and maintenance. The Act allows the department to require vehicle services providers like Lifeline Ambulance to have a primary affiliation with an EMS system in a primary service area. Lifeline could not transport any dialysis patient unless it was licensed, and part of a system covering the geographical location. The ambulance is not just another vehicle or conveyance while in transport to the patient. It's not like a taxi cab. It's not like an Uber. The clock starts ticking on getting the patient to a healthcare facility for healthcare services, not when the patient is on board, but from the moment of dispatch. The ambulance response is part of the services, hence the dissenting appellate judge's observation, which we think is very applicable here, that driving to pick up the patient is as much non-medical, I'm sorry, non-emergency medical services as driving with the patient on board. Applying the immunity here will not allow the defendants to escape all liability. We're still subject to liability, if plaintiffs can prove it, for willful and wanton negligence as stepped forth in the First Amendment complaint, and of course defendants remain subject at all times to regulation and oversight. What do we do with the plain reading? Because 3.150A says you're not civilly liable as a result of their acts or omissions in providing such services. In this case, the such services are non-emergency medical services, under 3.10G, right? And don't we have to go to the definition of non-emergency medical services to have that immunity, which that provision says medical care, clinical observations, or medical monitoring rendered to patients whose conditions do not meet the X definition of emergency. Before or during transportation of such patients to or from health care facilities. So isn't it the medical care, clinical observation, and how are you doing that when you're 20 miles away? Well, how are the paramedics doing it in American National Bank when they never locate the patient? And the court said there that although the plaintiff made the argument that the immunity was based on actually providing the care, the court said that we do not believe that this immunity is as narrow as the plaintiff believes it to be. We conclude, this is at 192.107.283, that the provision, the immunity, applies even though the actual remissions don't relate to the actual rendition of life support. The immunity is not limited just to the actual rendition of care. And that interpretation, now, I will say that. I will say this. American National Bank predates the statutory amendment that included non-emergency medical services in the definition of the immunity in the statute. But significantly, eight years later, in 2008 when the Supreme Court decided Abruzzo, the statute had been amended. Had been amended to include that language, and the court reaffirmed its interpretation in American National Bank. But both in Abruzzo and American National, the patients were in need of urgent care, right? Yes, and then in Wilkins, we had... Let me just keep with those cases. Both involved paramedics called to assist a patient at a residence. And neither case involved operation of an ambulance en route to a scene, but they involved the failure to render EMS service to a patient. So aren't they distinguishable? In the present case, defendant's ambulance wasn't essential to the non-emergency transport of the patient. And after the accident, another ambulance was called for the transport. Well, okay. Certainly one because of the accident. So you're citing these cases. I went to the plain language of the two statutes. And one vis-a-vis the other seems to say to get the immunity, you have to be providing non-emergency medical services, which are given in that statute. Medical care, clinical observation, or medical monitoring. But again, in American National Bank and Abruzzo, there was never any such service provided. They never got there. Or they couldn't find the patient. Or when they did get there, they didn't do anything. I think that American National Bank is probably the better case because there the court is saying that the immunity applies when you are taking that first step to reach the patient. These were located, but whether you're locating or reaching, the point is there is some conduct that is preparatory to providing the services that you read out loud in terms of the statute. It's got to be broader than simply actually providing medical services. That's the interpretation that this court has consistently applied. It's true enough, Justice Thomas, that those two cases involve emergencies. And again, in the first case, American National Bank, the law at the time didn't even expressly reference non-emergency medical services. In the second case, the statute did. And the immunity applies on its face to either medical or non-medical services. And what I'm suggesting is that the court should interpret those two consistently to recognize that there are multiple steps that have to fall in sequence before the ambulance is in a position to transport the patient. The first step is finding the patient, reaching the patient, locating the patient, and that has also been protected as an essential aspect of the service. Mr. Reeses, what are the public policies are implicated in construing the immunity provision one way or the other? What are the public policy? Well, I think in terms I think the statute is trying to strike a balance. I think the defendants are still liable for willful and wanton misconduct. But I think what the statute does recognize is that there should be some protection for whether it's public or private operators who are part of a greater system of providing emergency medical care from liability for ordinary negligence when there is an emergency. When they are, in the words of the statute, performing their, I think it's the normal course of their duties. And clearly this ambulance before the accident was in the normal course of its duties. And I think the statute has struck that balance. I think this court has recognized broadly the policy in construing the statute. And the legislature has not disagreed with that interpretation, which is now part of the law. To sum up, the act is comprehensive and broadly construed. Based on the wording of Section 310G and this court's own precedence, the immunity applies not just to medical services that are actually relevant to medical care. But to medical services that are rendered during transportation. Getting to the patient in a properly equipped and staffed ambulance is part of non-emergency medical services under the act. If there are no further questions, we ask that you reverse the appellate court and affirm the trial court. Thank you. May it please the court, my name is Michael Kelly. I represent the appellee in this matter, Mr. Roberto Hernandez. And we are here today asking this court to affirm the appellate court's decision ruling that there is no immunity under the EMS Act. Because at the time of the accident that took place, neither of the EMTs on board that ambulance were providing non-emergency medical services. To a patient who was already under the care of a healthcare facility and who was more than 20 miles away. In Wilkins v. Williams, this court specifically stated that, in Wilkins v. Williams, the case most recently interpreting this immunity provision, this court specifically stated, it is clear that immunity only extends to those providing emergency or non-emergency medical services. And there that takes us to section 3.10G of the statute, which defines the scope of services subject to regulation under the EMS Act. Those services include medical care, clinical observation, and medical monitoring. Again, these are all activities that EMTs provide to actual patients for which they are licensed to perform. Now in Wilkins, this court found that there were non-emergency medical services being provided to the patient. Because the patient was already on board the ambulance, thus the immunity provision was triggered. And both EMTs had immunity, not only to claims from the patient, but to any claims from third parties. This court also stated, in interpreting the provision, this court also said that the immunity in section 3.10A, looks to the nature of the services rendered. In this case, we think that if the appellate court read the rule, that in fact there were no services being rendered to a patient. At the time of the dispatch, as I've already stated, the patient is more than 20 miles away. This ambulance specifically receives a dispatch, and within minutes or possibly seconds, runs a red light and collides with my client's vehicle. It's simply not possible that they did anything other than take an off ramp from one road and start to drive out to the location for this non-emergency transport. So without a patient on board, frankly the appellants are asking this court to expand the definition of non-emergency medical services. To specifically include activities that don't involve any interaction with the patient. Now, this court has previously had a line of cases where in the context of emergency care, this court has recognized that conduct that is both predatory and integral to the provision of emergency care, is entitled to immunity. But in the context of those cases, the EMTs or paramedics were both already at the scene of the accident, and they were accused of failing to provide those services. I think that there's a logical interpretation of an immunity provision that provides immunity not just for their actions, but also for their emissions. So in that case, this court was simply reading the scope of services in Section 3.10 in conjunction with that immunity provision, to ensure that EMTs or paramedics were immune for any emissions for their conduct, that there was not some triggering event that had to be reached before that immunity provision applied. Are you arguing, counsel, that the line should be drawn between whether it's an emergency or non-emergency situation? In other words, if it's an emergency situation, as we had in our other cases, American National and Abruzzo, where either couldn't find the patient or the like, there would be immunity, but in a situation where it's non-emergency, there would be no immunity until they actually reached and were taking care of the patient? Is that what you're saying? Well, we're saying that in the first instance, I don't think whether it's an emergency or non-emergency, if there's no patient on board the ambulance, we don't think the immunity provision is triggered. However, if we get farther down the analysis and into this court, this court considers expanding the scope of non-emergency medical services to include conduct that is preparatory and integral to the provision of those services, I think that's where we start to consider whether the situation is an emergency or non-emergency. Because whether the act of driving this ambulance, and so just to be clear, so this is an ambulance that's being asked to drive from downtown Chicago to Hillside, more than 20 minutes away. There's a scheduled window to pick up a patient who has already received his treatment. They have an hour and 45 minute window to pick up this patient. We think that significance of the distinction between emergency or non-emergency services goes to whether driving the ambulance to that location for a pickup is actually integral to providing those non-emergency medical services. Because while a non-emergency medical transport requires an ambulance in order to occur, there's nothing that requires this specific ambulance. In a bruise zone, and we know that this specific ambulance wasn't required because first, this wasn't even the first ambulance assigned to this pickup. This was actually the second ambulance that was assigned. And then as soon as the accident takes place, a third ambulance is assigned. And then that patient is picked up with more than enough time to transport him within that window. Although there is no urgent, I mean, this is a patient who's already received treatment. There is no urgency behind this pickup, although granted that would be in the interest of the patient. I'm trying to understand what the rule is that you want us to promulgate. And you seem to be focusing on whether it was an hour and a half or in this situation, or suppose it's ten minutes and they had the same accident two blocks from the facility. Does that make a difference? No, we don't think the immunity provision should apply in either case. So what's the rule? What do you want us to say? I think the rule that we would like the court to determine is that an ambulance on its way to pick up a patient for a non-emergency transport is not covered by the immunity provision of the EMS Act. And so would we need to distance ourself or distinctly overrule either American National or Abruzzo? No, this court wouldn't need to overrule either of those cases. Both of those cases involve, well one, neither of those cases involve the operation of an ambulance, of the actual vehicle. Both of those cases involve EMTs at the scene attempting to actually render services to patients, but fail in the fact that they couldn't locate the patient, or in one case they visited with the patient, but then failed to accurately assess whatever was the problem that the patient was. And then those EMTs left and left the scene of the resident. So you are saying draw the line because it's non-emergency and they haven't reached the patient yet. Because there would be immunity if the patient were in the back of the ambulance, right? Certainly. And that's what Wilkins v. Boehner tells us is if there's a patient in the back, then non-emergency medical services are being provided while the ambulance is in operation. But until that patient is on board, simply driving that ambulance in and of itself is not a non-emergency medical service. There's nothing in 3.10G that relates in any way to simply driving an ambulance. That definition of non-emergency medical services speaks to care being rendered to patients. Thank you. So if I can just recap slightly on the issue of American National Bank and BRZO. If this Court were to decide to try to determine that the definition of non-emergency medical services should apply to conduct that is both preparatory and integral to the provision of services, I think that the result of the First District's decision would still stay the same. Nothing about their conduct was necessarily preparatory other than driving to the scene 20 miles away and that there was nothing, there is nothing integral about the provision of these services with respect to this specific ambulance. Does your argument hinge in any way upon, you mentioned a couple of times, I think, that the playup was under the care of another facility. I do think it's relevant. Again, it goes to the question of whether we can say if the immunity provision is only triggered because the EMTs are in the act of providing non-emergency medical services, I think that logically if that patient is already under the care of a healthcare facility, it can't be, it doesn't logically, it's not logically sound to say then that that patient was at the same time somehow receiving non-emergency medical services from EMTs driving the ambulance on the way to the hospital. What if the patient was not? Would it matter? I mean, is it just further support for your argument that they weren't providing non-medical, or is it hinge on that? No, I think it's just further support. I don't think it hinges in any way. I think the main question is what services are the EMTs in that ambulance providing to the patient. No, I don't think, I think that only provides support. Our argument isn't hinging on the fact that this patient is in a healthcare facility already. Now, one issue that was not discussed in the appellate court's decision, and where I think we find further support for our interpretation of the definition of non-emergency medical services, is the exclusion in Section 3.10H. That section specifically says that provisions of this act shall not apply to the use of an ambulance or SEMSV unless and until emergency or non-emergency medical services are needed during the use of the ambulance for the SEMSV. From our perspective, the most logical interpretation of that clause is that non-emergency medical services are not needed while an ambulance is being operated unless that patient is actually on board. And the rules of statutory construction require us to consider this provision in connection with the immunity provision as well as the definition of non-emergency medical services, where I think it's a perfectly logical interpretation, perfectly reasonable in this case to say that the provisions of the EMS Act do not even apply to the facts of this case. And if the court has no further questions, again, we ask that this court affirm the appellate court's decision finding that there is no immunity under the EMS Act to the operators of an ambulance dispatched to pick up a patient for non-emergency transport. And thank you for your time. Thank you. So from the appellate court, you're going to have to either overrule or drastically cut back on American National Bank and what you said in Abruzzo. We think that the court directly applied the immunity in its past decisions as the legislature intended broadly, and that interpretation is now part of the Act. Actual rendering of services is not required for the immunity to apply. We heard from counsel this morning about the interpretation of the Act, and one thing he didn't really ever mention is that the word before. The word before is part of the statute, precedes during transportation. The immunity applies for certain conduct that takes place before the actual transportation of the patient to or from the health care facility. As Justice Thomas, I think, asked earlier, does that before refer to medical care, clinical observation, or medical monitoring rendered to patients in Section 3.10G? Right. And it does say, if I can find it for a moment, yes, it refers to medical care or medical monitoring rendered to patients before or during transportation, but remember also that the court, this court, in interpreting similar language about providing services, has recognized that certain conduct is either preparatory to or the first step in or integral or essential to providing the service. So to give you an example, let's suppose, a little bit off the point here, but let's suppose something we can all understand. Let's suppose somebody falls, is in need of non-emergency medical transport, the call is placed to the private ambulance operator, the dispatcher gives pre-arrival instructions, sends the ambulance out. The pre-arrival instructions could be logically argued to fall within the immunity provision if later on the person argues that the pre-arrival instructions were negligently provided. That would be an instance, for example, when you would have an immunity that applies to something that is before the actual transportation. Obviously there's going to be different facts that fit either within or not fit within the statute, but I think that when you put together the language from this court's past decisions, that it should be pretty clear that getting to the patient with the ambulance is part of the service, although it may precede the actual rendering of the service. Now, there was this argument that, well, fortuitously, the patient was undergoing dialysis, was at the dialysis facility, which is a healthcare facility, and the dispatch was to transport that patient from the dialysis facility to a second healthcare facility. The statute is framed so that it applies to either to or from the healthcare facility for providing healthcare services. We've got it both ways here. That's not a reason not to apply the language of the statute. That's simply a fortuitous circumstance. It wouldn't have been any different if you flip it around and say, well, we were dispatched to transport the patient from the nursing care facility to the dialysis center. I think under the statute it's the same result. If the patient really was on board, would it make any difference? Of course not. The fact that they're already at one facility and awaiting transport to a second facility has really nothing to do with how the case should be decided and how the act should be read. There was also, Justice Garmon asked the question, where do you draw the line? And I think the answer I finally heard was, well, the patient has to be on board. And actually, that is applying the immunity in a way that doesn't square with the language of the statute on its face. It does not differentiate between emergency and non-emergency as far as the immunity. What you have to apply is the definition, and the definition we submit should be broadly construed, consistent with this Court's previous case law. Wilkins was mentioned, and yes, Wilkins is a non-emergency case where the patient was in the ambulance. It was broadly construed. I like Wilkins. Wilkins is why the statute would bar the third-party motorist action. But that case is not going to answer this question, which is what happens when the conduct at issue takes place after dispatch but before the ambulance gets there? The immunity has reasonable limits. Let's suppose we picked up the patient, no accident, we pick up the patient, the patient is transported successfully to the second healthcare facility, and at that point the ambulance either goes back to lifeline or maybe they go to lunch. Obviously the immunity is not going to apply in those circumstances. It has to be a situation where there is a dispatch for non-emergency medical services to or from a healthcare facility using a vehicle regulated by the Act. All of those conditions we submit were met. If there are no further questions, for all the reasons set forth in our briefing, we ask that you reverse the appellate court and defer it. Thank you very much. Thank you. Case number 124610, Hernandez v. Lifeline Ambulance, will be taken under advisement as agenda number 16. Mr. Reese, Mr. Kelly, we thank you for your arguments this morning. You are excused.